UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

JOHN DOE,

      Plaintiff,

                                Civil Action No. 1:26-cv-10486-ADB

      v.

PRESIDENT AND FELLOWS OF HARVARD

COLLEGE and THE HONORABLE AND

REVEREND THE BOARD OF OVERSEERS,

      Defendants.

## PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF

## MOTION FOR RECONSIDERATION OF ORDER DENYING PSEUDONYM

Plaintiff John Doe respectfully submits this Reply Memorandum in rebuttal to Defendant's

Opposition (Doc. No. 21) regarding Plaintiff's Motion for Reconsideration.

### I. RULE 54(b) GOVERNS INTERLOCUTORY RECONSIDERATION

Defendants attempt to subject Plaintiff to an artificially high legal hurdle by conflating

separate procedural frameworks. Specifically, Defendants assert that this Court may grant

reconsideration of an interlocutory order "only in a limited number of circumstances,"

citing *United States v. Allen*, 573 F.3d 42, 53 (1st Cir. 2009). (Opp. at 2). To manufacture this

standard, Defendants manually spliced the phrase "of an interlocutory order" directly next

to a quotation from *Allen* that belongs to an entirely different procedural rule.

1

The text of the *Allen* states "Federal Rules of Criminal Procedure do not contain a specific provision governing motions for reconsideration, [so criminal courts apply] Federal Rule of Civil Procedure 59(e)." *Id.* at 53. But Rule 59(e) applies exclusively to a final judgment. See Fed. R. Civ. P. 59(e); *see also Banister v. Davis*, 590 U.S. 504, 507 (2020). Rule 59(e) has no authority over interlocutory orders.

Furthermore, applying Rule 59(e) to interim orders is a recognized error of law because interim orders are governed entirely by Rule 54(b). Cobell v. Jewell, 802 F.3d 12, 19 (D.C. Cir. 2015). District courts have authority to modify interlocutory decisions "as justice requires." *Greene v. Union Mut. Life Ins. Co.*, 764 F.2d 19, 22-23 (1st Cir. 1985). *Doe v. Massachusetts Institute of Technology*, 46 F.4th 61 (1st Cir. 2022) provides a test to determine when "justice requires" a court to allow a plaintiff to proceed by pseudonym.

Defendants' reliance on *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) is similarly misplaced. Christianson did not address a court's management of its interim orders under Rule 54(b). Rather, *Christianson* is a "law of the case" decision addressing an exceptional jurisdictional conflict where two separate federal courts of appeals repeatedly transferred an action back and forth. Id. at 817.

Defendants apply Rule 59(e) to assert that Plaintiff is required to produce "newly discovered evidence" or an "intervening change in controlling law" to merit relief, but the correct rule, but Rule 59(e) does not apply.

## II. PLAINTIFF SATISFIES THE TEST UNDER *DOE V. MIT*

### A. Reasonable Fear of Unusually Severe Professional and Psychological Harm

Defendants mischaracterize as 'speculative' Plaintiff's assertion that unmasking would cause professional 'blackballing' (Opp. at 4). But Plaintiff's claim is corroborated by his observations and statistical argument. *See* Doc. No. 10 at 1. Plaintiff's claim is also corroborated by common sense: no sensible person could possibly agree that Plaintiff would not be at risk of blackballing in this matter, especially in light of the numerous high-profile cases of employees (such as Google engineer James Damore) being blackballed after making politically charged accusations.

Defendants mischaracterize as "[o]rdinary reputational injury, embarrassment, or economic loss" (Opp. at 5). But the severity of the harms Plaintiff has provided the Court extend far beyond ordinary. Furthermore, Defendants dismiss as "unverified" the "social media reports of politically motivated violence against anti-Jewish commentators", but such reports *are* verified: A confrontation with commentator Nick Fuentes, for instance, was videotaped and documented in court, and the attempted break-in of his home by an armed assailant who was immediately afterwards killed by police in a shootout was also videotaped and documented in court; the arson attack on James Fishback's home is corroborated by numerous credible eyewitnesses.

Defendants also argue that any harm to Plaintiff would be "self-inflicted" because the lawsuit contains "virulently antisemitic conspiracy theories". But these contents of the lawsuit are necessary to establish how heinous the discrimination faced by Plaintiff was: the discrimination was not 'accidental' or limited specifically to Plaintiff, it was an intentional effort by a genocidal, racial supremacist organization coordinating in a vast conspiracy to pursue their genocidal objectives against anyone who isn't a member of their

racial group. Any harm to befall Plaintiff would be not self-inflicted, but in part, *Harvard*-inflicted.

## B. Risk of Harm to Innocent Non-Parties

Defendants raise a new issue regarding harm to innocent non-parties (Opp. at 6). Unmasking presents a safety threat not only to Plaintiff, but to Plaintiff's family. The Jews are notorious, vicious murderers of the families of those who oppose their Jewish interests. In Palestine, Jews murder the families of their opposers in targeted attacks, including attacks on small children. When Iran retaliated to deter the Palestinian genocide, the Jews, with the assistance of the US military, murdered the families of Iranian officials in attacks, some attacks apparently targeting small children.

## C. Forestalling an Impermissible Chilling Effect on Future Litigants

Defendants raise a new issue regarding a 'chilling' effect on future litigants (Opp. at 3, 6). Unmasking would create a profound "chilling effect" on civil rights litigation. Fearing harm – including professional blackballing, assassination, and injury from non-parties – future potential plaintiffs would be dissuaded from litigating their civil rights if they knew they could not do so anonymously. Permitting pseudonymity ensures that the courthouse doors remain open to citizens who would otherwise be too intimidated to seek justice. Because Defendants have been unable to provide any evidence that proceeding by pseudonym would prejudice them, it stands to reason that Defendants' attempt to unmask Plaintiff amount to no more than an effort to threaten future plaintiffs.

## D. Actions Bound Up with Historically Confidential Proceedings

Because the core evidence and underlying operational files of this lawsuit are intertwined with administrative records that are legally kept confidential, proceeding under a pseudonym respects the privacy expectations inherent to higher education administration.

## III. DEFENDANTS FAIL TO DEMONSTRATE ANY COGNIZABLE PREJUDICE

Defendants boldly assert that Plaintiff's use of a pseudonym causes it prejudice, yet fail to offer a single concrete argument, fact, or example to support that claim (Opp. at 6).

In pseudonym jurisprudence, a defendant experiences prejudice only if anonymity actively impairs its operational ability to defend the action on the merits. Here, because Plaintiff's identity has been disclosed to the Court under seal, and will be disclosed to Defendants during discovery, Defendants are unhindered. Defendants can file legal responses unimpeded. Defendants face zero prejudice to their defense; rather, Defendants merely seek to weaponize public exposure to deter litigants from pursuing their civil rights.

Dated: May 21, 2026

Respectfully submitted,

John Doe

John Doe, Plaintiff Pro Se

5